Michael L. Rodenbaugh
California Bar No. 179059
Marie E. Richmond
California Bar No. 292962
RODENBAUGH LAW
25435 Hutchinson Road
Los Gatos, CA 95033

Attorneys for Mike Rodenbaugh

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RODENBAUGH, a California individual,<br><br>Plaintiff,<br>vs.<br><br>DAVID LAHOTI, aka Davendra Kumar Lahoti, an individual; RAVI LAHOTI, aka Ravindra Kumar Lahoti, an individual; and VIRTUAL POINT, INC., formerly a California corporation,<br><br>Defendants. | Case No. 20-cv-4069 JSC<br><br>**PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER [FRCP 65(b)(1); L.R. 65-1]** |

Pursuant to Fed. Rule Civ. Proc. 65(b)(1) and L.R. 65-1 Plaintiff Michael Rodenbaugh ("Plaintiff") hereby applies to this Court for a temporary restraining order ("TRO") imposing equitable relief.   In support of the motion, Plaintiff relies upon its Complaint in this action, the below Points and Authorities, Declarations of Plaintiff Mike Rodenbaugh and colleagues David Weslow and Steven Levy, attached Exhibits, and any further evidence and argument to be adduced further in this matter.

PLAINTIFF'S MOTION FOR TRO;
MEMO OF P&A ISO MOTION                                    Case No. 20-cv-4069 JSC

Plaintiff has provided email notice to Defendants as of the time of making this application. (*See* Rodenbaugh Decl., #20.)  Plaintiff provides a Proposed Order herewith.

WHEREFORE, Plaintiff respectfully requests that this Court grant this motion by entering the proposed Temporary Restraining Order.

DATED: June 22, 2020                          By: /s/ *Mike Rodenbaugh*

Mike Rodenbaugh
RODENBAUGH LAW
25435 Hutchinson Road
Los Gatos, CA 95033
Tel/fax:  (415) 738-8087

PLAINTIFF'S MOTION FOR TRO;
MEMO OF P&A ISO MOTION                                    Case No. 20-cv-4069 JSC

## Table of Contents

**I.   FACTS**                                                                                        **5**

**II.   A RESTRAINING ORDER SHOULD ISSUE AGAINST DEFENDANTS**                              **12**

  A.  Plaintiff is Entitled to a Temporary Restraining Order                               13

  1.  Plaintiff is likely to succeed on the merits of his case.                             13

  2.  Plaintiff will suffer irreparable harm in the absence of a TRO                        18

  3.  An order for relief is in the public interest.                                        19

  B. Alternatively, Plaintiff is Entitled to a Temporary Restraining Order Under the Sliding
Scale Standard                                                                                     19

**III.   CONCLUSION**                                                                                **20**

## Table of Authorities

**Ninth Circuit**

*Lahoti v. Vericheck, Inc.*,
    636 F.3d 501 (9th Cir. 2011)      7

*Lahoti v. VeriCheck, Inc.*,
    586 F.3d 1190 (9th Cir. 2009)      7

*Taylor v. Westly*,
    488 F.3d 1197 (9th Cir. 2007)      13

**District Courts**

*All. for the Wild Rockies v. Pena*,
    865 F.3d 1211 (9th Cir. 2017)      13, 19

*Behymer-Smith ex rel. Behymer v. Coral Acad. of Sci.*,
    427 F. Supp. 2d 969 (D. Nev. 2006)      12

*Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*,
    181 F.Supp.2d 1111, 1126 (E.D. Cal. 2001)      12

*County Green Party v. Clinton*,
    980 F.Supp. 1160 (D. Haw.1997)      12

*Grooms v. Legge*,
    No. 09CV489-IEG-POR, 2009 WL 704644 (S.D. Cal. Mar. 17, 2009)      16

*Paisa, Inc. v. N & G Auto, Inc.*,
    928 F. Supp. 1004, 1008 (C.D. Cal. 1996)      18

*Quiroga v. Chen*,
    735 F. Supp. 2d 1226 (D. Nev. 2010)      13

*SuccessFactors, Inc. v. Softscape, Inc.*,
    544 F. Supp. 2d 975, 983 (N.D. Cal. 2008)      18

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S REQUEST FOR A TEMPORARY RESTRAINING ORDER

### I.    FACTS

1.      Plaintiff Michael Rodenbaugh is an individual residing in Santa Cruz County, California, and is a longstanding active member of the California State Bar since 1995. Rodenbaugh Decl., #2.  Plaintiff has extensive experience, in particular, with legal issues involving domain names and/or trademarks.  Plaintiff represents and advises many companies and individuals in the domain name industry, including domain name owners, domain name registrars and domain name registries.  Plaintiff also represents and advises trademark owners with respect to domain name infringement and acquisition matters.  *Id.*, #3.

2.      Plaintiff is an active and well-known community participant with the International Corporation of Assigned Names and Numbers ("ICANN"), which is a California public benefit corporation that develops policy and generally regulates the Domain Name System ("DNS"), and thus the domain name industry -- consisting of ICANN-accredited domain name registries and registrars, and their customers including resellers, investors and end users of domain names. Plaintiff represents domain name registries and registrars in their dealings with ICANN, including arbitration pursuant to ICANN's Independent Review Policy.  Plaintiff also participates in many various ICANN policy working groups and implementation teams.  *Id.*, #4.

3.      Plaintiff is a panelist deciding domain name disputes for the Czech Arbitration Court, and has issued more than a dozen decisions under ICANN's Uniform Dispute Resolution Policy ("UDRP").  Plaintiff has directed the prosecution of more than a dozen ACPA cases and 200 UDRP cases, and has successfully defended UDRP and ACPA cases on behalf of domain name owners (including Defendants Dave Lahoti and Virtual Point).  *Id.*, #5.

4.      Since at least 1974 in general, and since 1995 as an active member of the legal profession, Plaintiff has been commonly known as Mike Rodenbaugh.  Since September 2007,

PLAINTIFF'S MOTION FOR TRO;
MEMO OF P&A ISO MOTION                                         Case No. 20-cv-4069 JSC

5

Plaintiff has done business as Rodenbaugh Law, a reputable law firm specializing in trademark and domain name matters, among other things, with Plaintiff's primary email address mike@rodenbaugh.com and website at rodenbaugh.com and/or rodenbaugh.law.  *Id.*, #6.

5.      Defendant Dave Lahoti is an individual residing, on information and belief, in Irvine, California.  Defendant Ravi Lahoti is an individual residing, on information and belief, in Irvine, California.  On information and belief, Ravi and Dave Lahoti are brothers, and have acted in conjunction and conspiracy with one another to cause the damages alleged herein. Rodenbaugh Decl., #7.

6.      On information and belief, Defendant Virtual Point, Inc. formerly was a California corporation wholly owned by Defendants Dave and/or Ravi Lahoti.  Currently, those individual Defendants collectively do business as Virtual Point, Inc., though such entity no longer appears registered with the California Secretary of State, and it is unclear whether or where such an entity is registered.  This purported entity remains a purported registrant of record for many domain names, including all of the domain names at issue in this Complaint.  Those domain name registration records indicate the individual registrant as "Tech Admin", and on information and belief that person is Defendant Dave Lahoti.  *Id.*, #8, Ex. A (WHOIS records for mikerodenbaugh.com, udrpsearch.com and davidweslowcheater.com).  As of February 2018, a UDRP panelist[1] noted that Defendant Dave Lahoti, represented by counsel in that case, "owned and operated" Defendant Virtual Point.  *Laboratoires Thea v. Tech Admin, Virtual Point Inc*., WIPO Case No. D2018-0039 ("Respondent is a company under the laws of the United States which was incorporated on January 22, 2007 by Mr. Dave Lahoti who still is Respondent's owner and operator.").

7.      Defendant Virtual Point has lost a number of UDRP decisions, each ordering transfer of domain names to the complaining party, and each indicating Defendant Dave Lahoti's

---

[1]  Plaintiff provides copies of all UDRP decisions cited herein, at Rodenbaugh Decl., Ex. B.

PLAINTIFF'S MOTION FOR TRO;
MEMO OF P&A ISO MOTION                                                    Case No. 20-cv-4069 JSC

control over Defendant Virtual Point.  *E.g., Poarch Band of Creek Indians dba PCI Gaming Authority v. Tech Admin, Virtual Point,* NAF Claim Number: FA1509001639763 (Nov. 13, 2015) (Dave Lahoti filed a supporting declaration); *Certipost NV v. Virtual Point Inc.*, WIPO Case No. D2008-1183 ("Mr. Lahoti incorporated the Respondent on January 22, 2007. As noted above, the Domain Name was transferred to the Respondent in early 2008. As the Respondent put it in the Response: 'All rights, title, interests, and license regarding the Domain Name and the mark were transferred from Mr. Lahoti individually to his wholly owned subsidiary, the Respondent.'")

8.      Defendant Dave Lahoti has repeatedly been deemed a "serial cybersquatter" by federal courts in the Ninth Circuit and elsewhere.  *E.g., Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 510–11 (9th Cir. 2011) (affirming cybersquatting verdict and award of attorneys' fees):

> *The district court determined that this case was exceptional, citing Lahoti's willful registration and use of the www. vericheck.com domain name, his "attempt to extort thousands of dollars from Vericheck," his disregard for Vericheck's trademark rights, his "pattern and practice of cybersquatting, including a pattern and practice of abusive litigation practices," and his "disregard for the submission of inaccurate answers to interrogatories.*

*See also, e.g., Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 (9th Cir. 2009) ("it is undisputed that Lahoti is a repeat cybersquatter who has registered hundreds of domain names resembling distinctive or famous trademarks and has been admonished by judicial bodies for doing so"); *E–Stamp Corp. v. Lahoti*, 2000 WL 33732808, 2:99-CV-9287-GAF-MAN (C.D. Cal. June. 12, 2000) (concluding that Lahoti was a "cybersquatter" and that his registration, attempted sale, and use of the estamps.com domain name violated federal trademark law and the ACPA).  Defendant Dave Lahoti has also been the loser of at least one UDRP decision, ordering the transfer of a domain name to the complaining party.  *E.g., Cloudmark, Inc. v. Dave Lahoti and Interspectrum,* WIPO Case No. D2003-0797.

9.      Defendant Ravi Lahoti recently swore to a federal court that he was the individual

registrant for a domain name registered to Virtual Point Inc.  Weslow Decl., #7, Ex. A (Lahoti

Decl.).  The court found him to be a "notorious cybersquatter" as well.  Rodenbaugh Decl., #8

Ex. C (Order from E.D. Va.).  Defendant Ravi Lahoti has also lost at least one UDRP decision,

ordering the transfer of a domain name to the complaining party.  *E.g., Imagine Solutions, Inc. v.*

*Encapture.com, Privacy Services / Ravindra Kumar Lahoti,* WIPO Case No. D2013-0268.

10.     Since at least 2010, Defendants have owned and operated the domain name

<UDRPsearch.com>, and have operated a website at that domain name which allows searching

of UDRP decisions and commentary on UDRP decisions.  *Id.*, #9, Ex. A (WHOIS record), Ex. D

(Wayback Machine screenshot).  Plaintiff regularly has utilized that website in the course of his

legal practice; and, on information and belief, many if not most attorneys and other professionals

in the domain name industry are familiar with the UDRPsearch website and have visited it

frequently in the course of their business.  *Id.*; *see also*, Weslow Decl., #10; Levy Decl., #3.

11.     Beginning in 2010, Rodenbaugh Law advised and successfully represented

Defendants Dave Lahoti and Virtual Point Inc. in a number of ACPA and UDRP disputes.  In or

about February 2015, Rodenbaugh Law withdrew as counsel in the only remaining, pending

matter for any of the Defendants, and terminated the attorney-client relationship with Defendants.

Since 2015, Plaintiff does not recall having had any communication to or from any of the

Defendants.  Rodenbaugh Decl., #10.

12.     In November 2015, Plaintiff obtained federal registration of the RODENBAUGH

LAW trademark, No. 4849962, for the following services  (*id.*, #11, Ex. E (USPTO registration

certificate):

> Legal consulting services in the field of intellectual property, trademarks, domain names,
> rights of publicity, copyright, Internet marketing, brand protection and enforcement, and
> e-commerce; Legal services, namely, intellectual property consulting services in the field
> of identification, strategy, analytics, and invention; Legal services, namely, preparation of
> applications for trademark registration; Legal services, namely, providing customized
> documentation, information, counseling, advice and consultation services in all areas of
> intellectual property, trademarks, domain names, rights of publicity, copyright, Internet

marketing, brand protection and enforcement, and e-commerce; Legal services, namely, trademark maintenance services; Providing customized legal information, counseling, and advice, and litigation services in the field of intellectual property, trademarks, domain names, rights of publicity, copyright, Internet marketing, brand protection and enforcement, and e-commerce; Providing information in the field of intellectual property legal services ; Providing legal research in the field of intellectual property, trademarks, domain names, rights of publicity, copyright, Internet marketing, brand protection and enforcement, and e-commerce; Providing legal services in the field of intellectual property, trademarks, domain names, rights of publicity, copyright, Internet marketing, brand protection and enforcement, and e-commerce; Registration of domain names for identification of users on a global computer network.

13.     On May 22, 2020, Defendants registered the domain name <mikerodenbaugh.com> and caused all DNS traffic from UDRPsearch.com to be immediately redirected to a website at mikerodenbaugh.com. *Id.*, #12, Ex. A (WHOIS record), Ex. F (screenshot).  Prominently displayed at the resulting website was, and still is, Plaintiff's facial image, as used on LinkedIn and elsewhere online, and a large and boldface accusation -- to wit ("Defendants' Statement"):



**Mike Rodenbaugh**                **is a Trust Fund *FRAUDSTER*...**

14.     Defendants also immediately created "MX" DNS records so they could send email to and from the <mikerodenbaugh.com> domain name.  *Id.*, #13, Ex. G (IPaddress.com record).

15.     Defendants also immediately offered that domain name for sale to any third party via Defendants' NAMEX domain name sales website, which features in Google search results for Plaintiff's name.  *Id.*, #14, Ex. H (screenshots).

16.     Consistently since at least May 26, 2020, Plaintiff has been notified by a growing number of colleagues in the domain name legal specialty, and a number of other domain name industry professionals, that they had tried to access UDRPsearch.com, and instead were directed

PLAINTIFF'S MOTION FOR TRO;
MEMO OF P&A ISO MOTION                                          Case No. 20-cv-4069 JSC

to the aforementioned, defamatory Defendants' Statement.  A number of those professionals expressed confusion as to the source of the domain name <mikerodenbaugh.com>, and many of them expressed concern for the harm to Plaintiff's reputation that has been caused and continues to accrue from Defendants' tortious behavior.  Specifically (Rodenbaugh Decl., #15),

    a.   On May 26, Plaintiff heard from well-known domain attorney John Berryhill, who informed Plaintiff of the UDRPsearch redirection to Defendants' Statement;

    b.   On May 27, Plaintiff heard from longtime colleague Phil Lodico, CEO of BrandSight Inc., who was confused whether Plaintiff had purchased UDRPsearch.com, and informed Plaintiff of the UDRPsearch redirection "to your [Plaintiff's] website it looks like."

    c.   On May 28, Plaintiff heard from well-known ICANN commenter George Kirikos, who informed Plaintiff of the UDRPsearch redirection to Defendants' Statement;

    d.   On May 28, Plaintiff heard from well-known domain name attorney and ICANN commenter Steven Levy, who informed Plaintiff of the UDRPsearch redirection to Defendants' Statement (*see also*, Levy Declaration);

    e.   On May 29, Plaintiff heard from longtime colleague Sara Freixa, Senior Manager at Com Laude, who asked if Plaintiff had "really pissed off the Lahoti brothers";

    f.   On June 2, Plaintiff heard from well-known domain attorney David Weslow of Wiley Rein LLP, who informed Plaintiff of the UDRPsearch redirection to Defendants' Statement, and noted that Defendants' were now also using the <davidweslowcheater.com> domain name to redirect DNS traffic to Defendants' Statement (*see also*, Weslow Declaration);

    g.   On June 3, on information and belief, Defendants under the pseudonym "LaughingBoy" posted a link to <mikerodenbaugh.com> in the comment section of a story called "This is how thieves trick customers into wiring money to them" on

PLAINTIFF'S MOTION FOR TRO;
MEMO OF P&A ISO MOTION
Case No. 20-cv-4069 JSC

Domain Name Wire, which is the most popular domain name industry blog.
Plaintiff's clients often advertise on and/or peruse Domain Name Wire
(Rodenbaugh Decl., #16, Ex. I (DNW screenshot);

h. On June 7, popular domain name blog DomainGang posted a story called
"UDRPsearch.com is now a Tom Cruise shrine!" which highlighted that
UDRPsearch traffic was then redirected to <davidweslowisacheater.com>, which
prominently displayed Defendants' Statement (*Id.*, #17, Ex. J (DomainGang
article);

i. On June 16, Plaintiff heard from well-known IP attorney and ICANN commenter
Fabricio Vayra of Perkins Coie LLP, who informed Plaintiff of the UDRPsearch
redirection to Defendants' Statement.

17.    That evidence proves that Defendants maliciously have sought to direct domain
name industry professionals, who are Plaintiff's longtime colleagues, clients and potential clients,
to Defendants' Statement by use of UDRPsearch.com and by posting a link to
mikerodenbaugh.com in perhaps the most popular domain name industry newsletter, Domain
Name Wire.  The use of UDRPsearch.com to redirect to Defendants' Statement (and
disparagement of Plaintiff's colleague, David Weslow) was also the subject of a story in popular
domain name industry blog, DomainGang.

18.    Plaintiff has suffered, and continues to suffer, harm to his valuable professional
reputation.  *Id.*, #18. Defendants' Statement plainly asserts that Plaintiff has committed "trust
fund fraud", which is perhaps the highest form of attorney misconduct, always resulting in
sanctions if not disbarment of attorneys -- if not also criminal charges.  Defendants' Statement
has been widely published as a boldface assertion of fact, and is designed to cause clients or
prospective clients to question whether Plaintiff stole money from a client.  That mere suspicion,
however brief or unfounded it may be, is materially harmful to Plaintiff and both his personal and

PLAINTIFF'S MOTION FOR TRO;
MEMO OF P&A ISO MOTION                                              Case No. 20-cv-4069 JSC

professional reputation. *Id.*

19.     Prior to Defendants' Statement, Plaintiff cannot recall ever having been <u>accused</u> of fraud in any respect, by anyone. *Id.*  The mere implication would be materially damaging to any attorney, but Defendants do not opine or imply, instead they explicitly and falsely state as a purported fact that Plaintiff has committed financial fraud against a client.

20.     Defendants' Statement is a specific, highly damaging and knowingly untrue statement made by Defendants, widely and maliciously published to legal colleagues and industry peers via use of a domain name that is identical to Plaintiff's personal and professional name.  That domain name clearly has been registered in bad faith, in clear violation of specific federal laws relating to domain names, personal names and/or trademarks.

21.     Because the harm to Plaintiff and his professional reputation is ongoing and severe, Plaintiff is forced to bring this matter to this Honorable Court for a prompt hearing, and prompt order to effectively stop the Defendants' clearly tortious behavior as soon as possible.  This is the last thing Plaintiff wishes to be engaged in during these times, but Plaintiff is left with no other choice. *Id.*, #19.

## II.     A RESTRAINING ORDER SHOULD ISSUE AGAINST DEFENDANTS

In determining whether to issue a temporary restraining order, the courts in the Ninth Circuit apply the same analysis as that for a preliminary injunction.  *E.g., Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F.Supp.2d 1111, 1126 (E.D. Cal. 2001); *Haw. County Green Party v. Clinton*, 980 F.Supp. 1160, 1164 (D. Haw.1997).  Accordingly, a plaintiff seeking a TRO may succeed by meeting either of two variants of the same standard.  *E.g., All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).

Cases following the traditional *Winter* standard require the plaintiff demonstrate: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to [the moving party] if preliminary relief is not granted, (3) a balance of hardships favoring the [moving party],

and (4) advancement of the public interest (in certain cases)." *Behymer-Smith ex rel. Behymer v. Coral Acad. of Sci.*, 427 F. Supp. 2d 969, 972 (D. Nev. 2006).  The alternative standard requires that a plaintiff demonstrate "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits.  Then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).

"These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Quiroga v. Chen*, 735 F. Supp. 2d 1226, 1228 (D. Nev. 2010) (*quoting Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir.2007)).  Under either standard, Plaintiff is entitled to a Temporary Restraining Order to stop Defendants' blatantly tortious behavior, which is proved by indisputable evidence, and is causing severe damage to Plaintiff's personal and professional reputation.

## A.  Plaintiff is Entitled to a Temporary Restraining Order

### 1.  *Plaintiff is likely to succeed on the merits of his case.*

In his Complaint, Plaintiff alleges five Counts against all Defendants.  Plaintiff hereby proves each element of each count via indisputable evidence, proving that he is highly likely to succeed on the merits of his case.

## COUNT I
### (ACPA Cyberpiracy - Personal Name)

Plaintiff proves that Defendants registered the domain name <mikerodenbaugh.com>, consisting solely of Plaintiff's personal name, without Plaintiff's consent, and with specific intent to profit from such name by selling it for financial gain to Plaintiff or any third party. Rodenbaugh Decl., #3, 6, 11, Ex. A, H.  That constitutes cyberpiracy, such that Defendants are liable in a civil action under 15 U.S.C. § 8131(1)(A), and the court may award injunctive relief, including transfer of the domain name to Plaintiff.  The court also may award costs and

attorneys' fees to Plaintiff as the prevailing party pursuant to Sec. 8131(2). Indeed, Defendant Dave Lahoti has repeatedly been deemed a "serial cybersquatter" by courts in the Ninth Circuit and elsewhere (with the Ninth Circuit twice affirming judgment against him, including award of attorneys' fees). And, Defendant Ravi Lahoti has recently also been deemed a "notorious cybersquatter" by Judge O'Grady in the Eastern District of Virginia.

## COUNT II
### (ACPA Cybersquatting - Trademark)

Defendants registered the domain name <mikerodenbaugh.com> with bad faith intent to profit from Plaintiff's corresponding service mark and personal name. *Id.*, #11, Ex. H. The domain name corresponds identically to Plaintiff's professional name and distinctive common law trademark. *Id.*, #3-6. The domain name also is highly confusingly similar to Plaintiff's registered and distinctive RODENBAUGH LAW trademark, insofar as the distinctive portion of that mark is Plaintiff's surname. *Id.*, #11, Ex. E. That surname is wholly incorporated in the domain name, and accompanied only by Plaintiff's common first name, often used by clients and others to refer colloquially and professionally to Plaintiff.

The ACPA lists nine non-exhaustive factors the Court may consider in determining whether Defendants registered or used the domain name in bad faith -- and all weigh solely in favor of such a finding. 15 U.S.C. § 1125(d)(1)(B)(i):

**(I)** the trademark or other intellectual property rights of the person, if any, in the domain name -- Defendants have none;

**(II)** the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person -- it does not refer to Defendants;

**(III)** the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services -- Defendants have no such use;

**(IV)** the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name -- Defendants have no such use;

**(V)** the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site -- Defendants have done precisely this, intending maliciously to harm the goodwill represented by Plaintiff's good name and distinctive trademark;

**(VI)** the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct - Defendants have offered to sell the domain name to any third party, and have not used nor intended to use the domain for any bona fide offering, and they have a long history of cybersquatting as found by the federal courts and UDRP panels;

**(VII)** the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct - Defendants may be misrepresenting there is an entity called Virtual Point Inc., in which name many of Defendants' domain names are registered;

**(VIII)** the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties -- Defendants have repeatedly been found by federal courts and UDRP panels to have

PLAINTIFF'S MOTION FOR TRO;
MEMO OF P&A ISO MOTION                                              Case No. 20-cv-4069 JSC

cybersquatted, and on information and belief they continue to own and/or control many infringing domain names; and,

**(IX)** the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection C -- Plaintiff's mark and professional name are each distinctive, as proved by federal registration of the mark and longstanding common law use of his professional name in global and U.S. commerce.

Defendants had no good faith or other legitimate purpose for registering or using the <mikerodenbaugh.com> domain name, other than to personally profit from sale of the name and/or to gain personal pleasure from maliciously denigrating Plaintiff's reputation. Indeed, Defendant Dave Lahoti has repeatedly been deemed a "serial cybersquatter" by courts in the Ninth Circuit and elsewhere (with the Ninth Circuit twice affirming judgment against him, including award of attorneys' fees). And, Defendant Ravi Lahoti has recently also been deemed a "notorious cybersquatter" by Judge O'Grady in the Eastern District of Virginia.

Therefore, Defendants are liable in a civil action under 15 U.S.C. § 1125(d)(1)(A), and the court may award injunctive relief, including transfer of the domain name to Plaintiff pursuant to § 1125(d)(1)(C). *See e.g. Grooms v. Legge*, No. 09CV489-IEG-POR, 2009 WL 704644, at *10 (S.D. Cal. Mar. 17, 2009) (finding a likelihood of success on plaintiff's claim for cybersquatting -- granting TRO. The court also may award costs and attorneys' fees to Plaintiff as the prevailing party in this exceptional case, pursuant to § 1117 of the Lanham Act.

## COUNT III
### (Cyperpiracy - Cal. Bus. & Prof. Code Sec. 17525(a))

As aforesaid, Defendants had a bad faith intent to register, traffic in, or use a domain name that is identical or confusingly similar to the personal name of Plaintiff. Therefore, Defendants are liable in a civil action under Cal. Bus. & Prof. Code Sec. 17525(a). The court also may award costs and attorneys' fees to Plaintiff as the prevailing party pursuant to Cal. Bus. & Prof. Code §

17200 *et seq*

## <u>COUNT IV</u>
### <u>(Defamation)</u>

Defendants' Statement was published to many persons other than Plaintiff, on the Defendants' website resolving at <mikerodenbaugh.com>, with all traffic to the UDRPsearch website directed instead to Defendants' Statement.  There is no question that any person who visited the website reasonably understood that Defendants' Statement was about Plaintiff, because it not only included Plaintiff's full name, but also a widely published professional photo of Plaintiff.  Any person who read the Defendants' Statement could understand it to mean that Plaintiff has committed fraud with respect to client trust funds.  Therefore, Defendants' Statement constitutes defamation *per se* under California law.

Defendants recklessly and willfully published Defendants' Statement with malice, oppression and fraud -- indeed with full knowledge both of its absolute falsity, and of its likely severe impact on Plaintiff's professional reputation.  Most certainly, they made no reasonable effort to ascertain the truth of their statement before publishing it.  As the result of Defendants' wrongful conduct in publishing and continuing to publish Defendants' Statement, which is a substantial factor in causing damage to Plaintiff, Plaintiff has suffered actual harm, including without limitation: (1) harm to Plaintiff's property, business, trade, profession, and occupation; (2) expenses Plaintiff has paid and will pay as a result of the defamatory statement; and (3) harm to Plaintiff's personal reputation.  *See e.g., SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 982 (N.D. Cal. 2008) (finding a likelihood of success on the merits concerning a Lanham Act false advertising claim where defendant allegedly distributed a damaging email about its competitor, plaintiff, to plaintiff's customers, which resulted in "numerous inquiries from concerned current and prospective customers' to plaintiff).

Plaintiff also seeks punitive damages because clear and convincing evidence proves that

Defendants' Statement has been made with malice, oppression, and/or fraud.  The court also may award costs and attorneys' fees to Plaintiff as the prevailing party pursuant to Cal. Bus. & Prof. Code § 17200 *et seq.*

**COUNT V**
**(Unfair Competition - Cal. Bus. & Prof. Code § 17200 *et seq*)**

As aforesaid, Defendants' wrongful acts are unfair and illegal, and cause damage to Plaintiff and injures his business and personal and professional reputation, in violation of § 17200 *et seq.* of the California Business and Professions Code.  As a result of Defendants' past and continued wrongful acts, Plaintiff has incurred damages in an amount to be proved at trial, including compensation for Plaintiff's time and effort (i.e. his reasonable attorneys' fees, *pro se*). The court may award costs and attorneys' fees to Plaintiff as the prevailing party.

*2.   Plaintiff will suffer irreparable harm in the absence of a TRO*

As aforesaid, Plaintiff has pleaded and demonstrated by indisputable evidence that his personal and professional reputation is currently suffering from Defendants' malicious behavior. Trust fund fraud is perhaps the most damaging allegation anyone could make about an attorney. Even if the allegation is quickly disregarded and/or disproved, damage is done merely because colleagues, clients and/or prospective clients have spent time and mindspace on considering the allegation.  Some may not bother to consider it, and/or may consider it to be true.  Merely by making Defendants' Statement, and widely publishing it in the maliciously targeted manner in which Defendants have published it, Defendants intended to and indeed have caused Plaintiff substantial, irreparable harm to his reputation.  That apparently will continue unless and until this Court orders Defendants to stop.  *See e.g. SuccessFactors,* 544 F. Supp. 2d at 983 (finding plaintiff had sufficiently demonstrated it would suffer irreparable injury where plaintiff argued that "it will "continue to suffer immeasurable loss to its relationships with actual and prospective customers caused by the distribution of the Presentation if an injunction does not issue."" --

granting TRO); *Paisa, Inc. v. N & G Auto, Inc.*, 928 F. Supp. 1004, 1008 (C.D. Cal. 1996) (finding plaintiff was entitled to injunctive relief where "defendant's ongoing infringement invariably threatene[d] injury to the economic value of the goodwill and reputation associated with [plaintiff]'s mark.").

### 3. The balance of equities tips in Plaintiff's favor.

There is simply no equity in favor of Defendants, at all.  They have merely continued their longstanding, cybersquatting behavior but this time have chosen Plaintiff as their target, and have decided to also maliciously defame Plaintiff by use of their cybersquatting tactics.  They have full knowledge that their behavior is illegal, and are simply taunting Plaintiff and this Court to stop them.  Meanwhile, irreparable harm to Plaintiff's reputation continues to grow each and every day.  The equities in this case are 100% in favor of Plaintiff, requiring this Court to intervene to stop Defendants' willful wrongdoing.

### 4. An order for relief is in the public interest.

There is a strong public interest in the professional reputation of attorneys.  In some sense, an allegation of trust fund fraud against one attorney negatively affects all attorneys insofar as members of the public may assume such misconduct (or crime) is much more common than it is. There also is a strong, general public interest in preventing disinformation and defamation online. Without this Court's intervention, Plaintiff's reputation will continue to be harmed, thus harming to some extent the reputation of all attorneys, and Defendants' (malicious, patently false) Statement will continue to be widely published at least within the domain name industry.

### B. Alternatively, Plaintiff is Entitled to a Temporary Restraining Order Under the Sliding Scale Standard

In the event the Court finds that Plaintiff is not entitled to relief under the *Winter* standard, Plaintiff is entitled relief under the alternative standard, which requires that Plaintiff demonstrate "'serious questions going to the merits" and  that "'balance of hardships tips sharply in the

PLAINTIFF'S MOTION FOR TRO;
MEMO OF P&A ISO MOTION                                    Case No. 20-cv-4069 JSC

plaintiff's favor". *All. for the Wild Rockies*, 865 F.3d at 1217. At a minimum and as described above, Plaintiff has raised serious questions regarding the merits of this case. Moreover, there is no question that the balance of hardships tips sharply in Plaintiff's favor given that an order granting a TRO will have little to no effect on Defendants. Defendants will merely be required to take down the website that contains the maliciously false Defendants' Statement, and transfer the mikerodenbaugh.com domain name to Mike Rodenbaugh. Therefore, under either standard, Plaintiff is entitled to the TRO that he seeks.

### III.    CONCLUSION

For all of the foregoing reasons, Plaintiff prays for this Court to issue the requested Temporary Restraining Order, forcing Defendants to cease their seriously damaging behavior. A proposed Order is filed herewith, for the Court's consideration.

DATED: June 22, 2020                    By: /s/ *Mike Rodenbaugh*

Mike Rodenbaugh
RODENBAUGH LAW
584 Market Street -- Box 55819
San Francisco, CA  94014
Tel/fax:  (415) 738-8087

PLAINTIFF'S MOTION FOR TRO;
MEMO OF P&A ISO MOTION                                   Case No. 20-cv-4069 JSC