## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

MICHAEL RODENBAUGH,

     Plaintiff,

  v.

DAVE LAHOTI, et al.,

     Defendants.

Case No. 20-cv-04069-EMC

### AFFIDAVIT OF DAVE K. LAHOTI
### IN OPPOSITION TO TEMPORARY RESTRAINING ORDER

State of California    )
           ) ss.
Orange County      )

   Dave K. Lahoti, being duly sworn, states the following:

   1.  My Name is Dave Lahoti and I have been named as a Defendant in the above-captioned action. I make this Affidavit for the specific purpose of opposing and countering the allegations and misrepresentations contained in Plaintiff Michael Rodenbaugh's application for a temporary restraining order.

   2.  This Affidavit should not be construed as consenting to the Venue of this District Court, which does not appear appropriate for this action and application.

**Background**

   3.  I am a resident of Orange County, California.

   4.  I own and operate VirtualPoint, Inc. ("VirtualPoint") a California Corporation

with its principal place of business in Orange County, California.

5.      VirtualPoint is a web development firm that specializes in the development of websites, including Verimark.com, Frip.com, Kidex.com, UDRPsearch.com, Y10.com, and others.

6.      VirtualPoint acquires generic, descriptive and fanciful site names, which are reserved for our own potential development.  We do not market or promote the sale of our site names.  Due to the quality of our site names, however, we receive a significant amount of unsolicited e-mails to acquire them.  As a result of this, we developed a web-based "Make Offer" process to handle the voluminous unsolicited inbound interest.  We have determined that this is the most efficient way to manage the unsolicited interest to our site names.  Mike Rodenbaugh represented VirtualPoint in connection with certain agreements that warranted his involvement – including the agreement underlying the misuse of client funds at issue in this case.

7.      Due to the desirability and scarcity of quality site names, and fundamental misunderstandings about the rights in and to generic, dictionary word site names, VirtualPoint has been occasionally subjected to baseless and overreaching claims.

8.      Mike Rodenbaugh successfully represented VirtualPoint in several of these matters, and had even explored whether actions could be taken to undo what he acknowledged were unjust results in *Lahoti v. Vericheck, Inc.,* 708 F. Supp. 2d 1150 (W.D. Wash 2010), and *E-Stamp Corp. v. Lahoti*, Case No. 99-cv-9287 (C.D. Cal. June 14, 2000).

9.      Mike Rodenbaugh further reinforced his belief of my innocence by referring to Attorney Derek Newman, of Newman Law, who handled the *Vericheck* matter as a

"Strange Bird" upon his initial introduction to me at the web industry conference where we first met in 2009. As a result, his convenient claim that I am now somehow a "serial cybersquatter" is self-serving and inconsistent with his prior assertions and actions.

10.     I still feel strongly that the above decisions should have been decided differently, which did not take into account the obvious generic nature of <eStamps.com>, the existence of other similarly named businesses, or my interest in registering "VERI" and "CERTI" formative site names. I also believe that the Court in the *Vericheck* case referring to me as a "serial cybersquatter" was because the court was influenced by the decision in the *eStamps* case, which was acknowledged as unfair and unwarranted by the legal community at large. Both cases involved common dictionary words and combinations – not well-known, distinctive trademarks, such as Google, Verizon, or Facebook.

11.     Mike now wants to conveniently rely on those outcomes, which he clearly acknowledged were unjust and wrongful in the course of courting me to be his client, to now refer to me as a "serial cybersquatter." This is a self-serving misrepresentation. We even prevailed on each and every issue that he was involved in which is further perplexing as it pertains to this current action.

12.     The notable decisions in VirtualPoint's and Dave Lahoti's favor include the following:

> a.  *Laboratoires Thea v. Tech Admin, VirtualPoint Inc.,* Case No. D2018-0039 (WIPO Feb. 27, 2018)(denying complaint for <virgan.com>);
> b.  *Chandler Systems, Incorporated v. Tech Admin*, VirtualPoint, Case No. D2017-1665 (WIPO Oct. 29, 2017)(denying complaint for <watersoft.com>);
> c.  *FastTrak v. Tech Admin, VirtualPoint, Inc.*, Case No. D2017-0652 (WIPO May 16, 2017)(denying complaint for fasttrak.com>);
> d.  *Defy Media v. VirtualPoint*, Case No. 2015-1249 (WIPO September 10, 2015)(denying complaint for <addicting-games.com>);

     e. *Hedera AB v. Support Desk, Captive Media*, Case No. D2013-2102 (WIPO January 24, 2014) (denying complaint for <stabletable.com>);

     f. *Navista S.A. v. VirtualPoint Inc. dba CrossPath, It Manager*, Case No. D2012-1157 (WIPO July 24, 2012)(denying complaint for <navista.com>)

     g. *Airborne Systems Group Ltd. et al. v. VirtualPoint, Inc.*, Case No. D2008-1669 (WIPO March 6, 2009)(denying complaint for <airbornesystems.com>);

     h. *Commonwealth Communications Group, Inc. v. David Lahoti dba eSecure*, Claim No: FA0109000100124 (NAF Nov. 5, 2001)(denying complaint for <intelilink.com> and finding attempted reverse domain name hijacking).

13.     Mike represented VirtualPoint in site name and other discrete matters for a period of five years during 2010 - 2014. We implicitly ended our relationship after Mike diverted the proceeds from the transfer of a site name and repeatedly refused to wire them to our bank account.

**Plaintiff Mishandled and Converted Funds**

14.     Plaintiff's application papers conveniently fail to mention any of the facts surrounding the termination of our attorney-client relationship, which ultimately ended after Plaintiff diverted and laid claim to proceeds of a VirtualPoint transaction – under the guise of using the funds to pay unrelated invoices and future retainers and against my explicit and strenuous objections.

15.     The transaction in question was a site name transfer in late 2014 on which Plaintiff acted as VirtualPoint's counsel. Mike informed me that the funds were secured in his Trust Account which was a surprise to us given that the default understanding was that the funds were supposed to come directly to us. He then instructed us to proceed with the unlocking and transfer, which we did, directly to the buyer, and we then requested the funds be dispersed to our bank. It was important that the proceeds be received to our account, so that we could properly account for the sale.

16.     Despite these clear instructions, Plaintiff repeatedly failed to transfer the funds. See **Exhibit A**, a December email chain between Plaintiff and me.

17.     Plaintiff and I then agreed to discuss the matter via Skype at a mutually agreeable time on December 9, 2014, but despite my presence, Plaintiff failed to appear. However, later that same day, Mike sent me an email dictating his intention to keep the sale proceeds of VirtualPoint's transaction to offset unrelated invoices, some of which had not even been billed to us yet at that point, and for future "expected" work on another matter. See **Exhibit A**.

18.     I then sent Plaintiff a Skype recording in response to his email, still on December 9, 2014, again reiterating that it was improper for Plaintiff to have converted the transfer transaction proceeds and for further failing to appear for our Skype meeting to discuss the issue. This Skype recording is referenced in the email chain in **Exhibit A**.

19.     In response to my recording, Plaintiff sent me an email on December 11, 2014, now permanently refusing to participate on Skype video calls and reiterating his unjustifiable positions as described above, while at the same time informing us that he was raising his hourly rates.  I took the statement that he was raising his hourly rates to be retaliatory, as a reaction to my reiterating to him that he should release the proceeds of the site name transfer to us, especially since I had just asked Mike if he could reduce his hourly rates.

20.     Plaintiff further stated in the email the following:

"In any event, you appear to dispute ownership of some or all of the funds received in trust for settlement of the taxpert matter, and therefore I will not use them to pay your

invoices until you affirmatively agree."

Id.

21.    By saying that I "dispute[d] ownership" of funds that he acknowledged were *my* funds, Mike was making it clear that he was unjustly intercepting the proceeds from the <taxpert.com> transfer for himself.

22.    Despite Plaintiff assurance to not convert my rightful funds, and despite the fact that I certainly did not affirmatively agree for Plaintiff to use the funds to offset any invoices that I had not even received nor reviewed, Plaintiff never transferred or otherwise remitted the transfer proceeds to us. Plaintiff did, however, formally withdraw from the last remaining matter that he was counsel to VirtualPoint on and to which was part of his unethical basis for withholding and converting the transfer funds even though we had already implicitly ended our relationship based on his improper conduct several weeks prior.

23.    On March 10, 2017, when I emailed Plaintiff requesting a bank transaction history for the funds of the above sale, Plaintiff simply replied with:

> "As I recall, funds received in our trust account eventually were applied against
> unpaid and undisputed invoices, and some remaining balance was written off as
> uncollectable."

See **Exhibit B**. Plaintiff thus admitted that he converted the sale proceeds despite his assurance above that he would not do so unless I affirmatively agreed.

**The <mikerodenbaugh.com> Site Name**

24.    I registered the <mikerodenbaugh.com> site name (the "Site Name") on May 22, 2020 for the purpose of communicating to our followers about Plaintiff's unethical and

6

unlawful behavior, based on the above actions Plaintiff took while he was VirtualPoint's attorney.

25.     Despite Plaintiff's absurd misrepresentations otherwise, I never had any intention to sell the Site Name, and Plaintiff's own evidence clearly illustrates this to be the case.

26.     In fact, Plaintiff even acknowledged in his papers that upon the Site Name being registered on May 22, 2020, all traffic *immediately* directed to a website displaying Plaintiff's image with the word "Fraudster." See ¶ 13 of Plaintiff's Motion, Dkt. 5:

> 13.     On May 22, 2020, Defendants registered the domain name <mikerodenbaugh.com> and caused all DNS traffic from UDRPsearch.com to be immediately redirected to a website at mikerodenbaugh.com. *Id.*, #12, Ex. A (WHOIS record), Ex. F (screenshot). Prominently displayed at the resulting website was, and still is, Plaintiff's facial image, as used on LinkedIn and elsewhere online, and a large and boldface accusation -- to wit ("Defendants' Statement"):



**Mike Rodenbaugh**          is a Trust Fund *FRAUDSTER...*

27.     Even Plaintiff's Google Search results that he relies on in Exhibit H of the Motion also show that the Site Name was not for sale and was clearly serving it's intended purpose to communicate with our followers:



See Dkt 5-04.

28.     To the extent that there was any "Make Offer" setting initially on the Site Name, it was likely due to a provisioning propagation delay as is common for a newly configured site name.  It is absurd for Plaintiff to claim that the intended purpose of the Site Name was for the purpose of selling it since that would clearly defeat the purpose of my ability to communicate to my followers about Plaintiff's disgraceful conduct.

29.     The truth is not for sale and can never be bought.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: June 26, 2020

_D. Lahoti_____
Dave Lahoti


Sworn to before me this
26th  day of June 2020


_____
Notary Public


*See Attached*
*Notary Public Document*

# CALIFORNIA JURAT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          }

COUNTY OF _____*Orange*_____ }

Subscribed and sworn to (or affirmed) before me on this ___*26th*___ day of ___*June*___, *2020*
                                                          Date          Month         Year

by ___*Dave Lahoti,*___

_____
                        Name of Signers

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature: _____
            *Signature of Notary Public*

TORU HORIMACHI
Notary Public – California
Orange County
Commission # 2225278
My Comm. Expires Jan 11, 2022

*Seal*
*Place Notary Seal Above*

--------------------------------------------------- **OPTIONAL** ---------------------------------------------------

*Though this section is optional, completing this information can deter alteration of the document or fraudulent attachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document:_____

Document Date:_____

Number of Pages:_____

Signer(s) Other Than Named Above:_____

**EXHIBIT A**



# LEWIS & LIN LLC
### ▶▶▶ INTERNET LAW COUNSEL

Michael Cilento <michael@ilawco.com>

---

## Fwd: Follow Up to Voicemail Re Domain Sale
1 message

---

Begin forwarded message:

**From:** Mike Rodenbaugh <mike@rodenbaugh.com>
**Subject: Re: Follow Up To Voicemail Re Domain Sale**
**Date:** December 12, 2014 at 12:37:20 AM EST
**To:** David Lahoti <david@virtualpoint.com>
**Cc:** Brett Wakino <brett@wakino.com>, Marie Richmond <marie@rodenbaugh.com>, Melanie Kimery <melanie@rodenbaugh.com>

Dave,

My duty of loyalty to you is now in question, as you have threatened legal action and consequently our communications have become antagonistic.  I cannot fully and fairly represent you under these circumstances; so they need to be resolved quickly, as we have pressing matters.  Please consider your next communications and decision carefully, and I will do the same.  If we do not reach mutual resolution quickly, then I will need to end our attorney-client relationship.

Thanks,
Mike

Mike Rodenbaugh
RODENBAUGH LAW
tel/fax:  +1.415.738.8087
http://rodenbaugh.com

On Thu, Dec 11, 2014 at 9:11 PM, David Lahoti <david@virtualpoint.com> wrote:
  Shame on you for crossing the line...

  Sent from iPhone

  On Dec 11, 2014, at 8:51 PM, Mike Rodenbaugh <mike@rodenbaugh.com> wrote:

    Dave,

    After a very brief trial, I am no longer going to do Skype video chat with you.  Because we have so many communications, and you are now threatening me with some sort of legal action, I need to keep all our communications in one sorted, searchable and easily archived medium.

    In response to some of your questions, our retention agreement is attached.  It was for a very limited scope, with all additional work to be mutually agreed.  By course of performance over the last several years, you have instructed me to take various actions and have paid our agreed hourly rates for those actions, which is appreciated and typical of all our clients.  You also have repeatedly paid our invoices from settlement funds received into our trust account, as is typical of our clients and is entirely ethically appropriate.  It is also a primary reason I have not always required an advanced fee retainer.  Moreover, none of those cases got as far as these two seem likely to go.  ***In any event, you appear to dispute ownership of some or all of the funds received in trust for settlement of the taxpert matter, and therefore I will not use them to pay your invoices until you***

*affirmatively agree. If you do not affirmatively agree by Jan. 15, or otherwise pay your entire invoiced balance in full and on time (in which event we will forward all of the funds in the trust account), or provide reasonable explanation of any dispute, then you will be in breach of our agreement as to fees.*

Our litigation clients typically pay an advanced fee retainer, this protects us both. I have already communicated our advanced fee retainer requirements for the ongoing litigation, but I will emphasize them from my Dec. 9 email: "*I must require a $20k advanced fee retainer for Rosenzweig, which will remain in our trust account until that matter is concluded; while you continue to pay monthly invoices in full and on time per our agreement. Given our relationship, I will not require an advance fee retainer for Hedera at this point, provided you continue to make the monthly invoice payments in full and on time. I note VPI's last payment did not pay all invoices in full; but I am even more concerned about the next few months when fees and costs are going to be significantly higher.*" We cannot accept the risk of working in ongoing litigation without a sufficient advanced fee retainer to cover expected work. *If the advanced fee retainer is not timely received in the next ten days, then we will move the court to withdraw from the Rosenzweig litigation because we will not be ensured of payment, and we will immediately demand advanced fee retainer payment in the Hedera matter.* Meanwhile we will continue with the pressing discovery in the Rosenzweig matter and with the amended complaint due soon in the Hedera matter.

In response to your demand that I decrease my hourly rate to $300, I refuse to do so. Furthermore, note that most of our clients pay substantially higher hourly rates than you are paying, as I have not raised my rate for your work since our first matter in 2010. I had not recognized that, and of course our costs have increased significantly since then, and so I will need to raise our rates for your work now. *This message constitutes the required 30-day notice of a rate increase, which will be effective as of January 10. My rate will increase to my standard rate of $475/hour, and Marie's to her standard rate of $275/hour.*

I regret that our communications seem to have gotten off track. Hopefully this one is clear. Please let me know any questions.

Thanks,
Mike

Mike Rodenbaugh
RODENBAUGH LAW
tel/fax: +1.415.738.8087
http://rodenbaugh.com

On Tue, Dec 9, 2014 at 6:45 PM, David Lahoti <david@virtualpoint.com> wrote:

> Mike,
>
> Again, we had a mutual understanding yesterday that we would discuss this via Skype.
>
> I tried to reach you today via Skype around the time you said you would be available, but you were still unavailable.
>
> As a result, I've sent you Skype recordings in response.
>
> Sincerely,
> Dave
>
> Please see On 12/9/2014 11:19 AM, Mike Rodenbaugh wrote:
>
>> Dave, re the finances:
>>
>> VPI currently owes us about $11k through Nov. 30.
>>
>> Both Hedera and Rosenzweig cases are now into continuous litigation, apparently unlikely to settle any time soon. I expect fees and costs typically will range $5k to $10k per month, combined; but December and January likely to be much higher than that if we have to oppose the Hedera

motion while also dealing with discovery and the settlement conference with Rosenzweig. The ramp-up to the settlement conference, plus preparation for the expected depositions, plus attendance at the conference is expected to cost at least $10k. If we do not settle at the settlement conference -- and I expect that is unlikely -- then depositions the following two days will add another $10k at least. Therefore I am reasonably anticipating from $20k to $30k in fees and costs in January alone for the two matters.

So, I must require a $20k advanced fee retainer for Rosenzweig, which will remain in our trust account until that matter is concluded; while you continue to pay monthly invoices in full and on time per our agreement. Given our relationship, I will not require an advance fee retainer for Hedera at this point, provided you continue to make the monthly invoice payments in full and on time. I note VPI's last payment did not pay all invoices in full; but I am even more concerned about the next few months when fees and costs are going to be significantly higher.

As for the $13k received in the taxpert.com matter, I would like to deduct what is currently owed in that and the other matters, and then credit the rest against the $20k advance fee retainer -- so you need to pay around $18k more at this point, within the next ten days please. Melanie will have the invoices through Nov. out to you tonight or tomorrow night, with the precise numbers. Once you have reviewed those, then please let me know any questions.

Thanks,
Mike

Mike Rodenbaugh
RODENBAUGH LAW
tel/fax: +1.415.738.8087
http://rodenbaugh.com

On Wed, Dec 3, 2014 at 4:14 PM, David Lahoti <david@virtualpoint.com> wrote:
> On 12/1/2014 10:24 AM, David Lahoti wrote:
>> Hi Mike,
>>
>> We sent the process to Arnold directly on the ticket.
>>
>> Please wire the received funds using the bank info on the ticket.
>>
>> Thank you,
>> Dave
>>
>>
>> --
>> David Lahoti
>
>
>
>
>
> --
> David Lahoti

&lt;Virtual Point RetentionAgreement.pdf&gt;

**EXHIBIT B**



Michael Cilento <michael@ilawco.com>

---

## Fwd: Overdue Payment; Withdrawal as Counsel
1 message

---

Begin forwarded message:

**From:** Mike Rodenbaugh <mike@rodenbaugh.com>
**Subject: Re: Overdue Payment; Withdrawal as Counsel**
**Date:** March 12, 2017 at 10:55:03 PM EDT
**To:** Dave Lahoti <dave@virtualpoint.com>
**Cc:** Brett Lewis <brett@ilawco.com>, Brian Kinder <bkinder@tklglaw.com>

Dave,

As I recall, funds received in our trust account eventually were applied against unpaid and undisputed invoices, and some remaining balance was written off as uncollectable.

Best,
Mike

Mike Rodenbaugh
RODENBAUGH LAW
tel/fax: +1.415.738.8087
http://rodenbaugh.com

On Fri, Mar 10, 2017 at 4:53 PM, Dave Lahoti <dave@virtualpoint.com> wrote:
> Dear Mike,
>
> Please provide a bank transaction history of the sale funds of Taxpert.com that were wired into our trust account on December 1, 2014.
>
> Thank you,
> Dave Lahoti
>
> On Mon, Jan 05, 2015 at 09:10:30PM -0800, Mike Rodenbaugh wrote:
> > Dave,
> >
> > I still have no response from you, and have now not heard anything
> > substantial from you for almost a month. Therefore you are breaching other
> > provisions of our agreement which require you to respond to my inquiries as
> > to scope of services, and to keep me advised as to your whereabouts.
> > Therefore you leave us no choice but to make a motion for withdrawal as
> > counsel. As a courtesy, we will inform opposing counsel of same, and
> > request continuance of pending dates for sixty days so VPI can find new
> > counsel if it chooses, and so the settlement judge and opposing counsel are
> > not inconvenienced. Note, VPI cannot represent itself, therefore if the
> > court allows us to withdraw (as we expect), then the court will set a
> > deadline for VPI to retain alternate counsel, else will dismiss the case.
> >
> > Mike Rodenbaugh
> > RODENBAUGH LAW
> > tel/fax: +1.415.738.8087
> > http://rodenbaugh.com

1

## PROOF OF SERVICE

2        I, Heather L. Hong, declare:

3        I am a citizen of the United States and employed in Santa Clara County, California.  I am

4    over the age of eighteen years and not a party to the within-entitled action.  My business address

5    is 60 South Market Street, Suite 1000, San Jose, California  95113-2336.  On June 26, 2020, I

6    served a copy of the within document(s):

7               AFFIDAVIT OF DAVE K. LAHOTI IN OPPOSITION TO
                TEMPORARY RESTRAINING ORDER
8

9    ☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set
          forth below on this date before 5:00 p.m.

10   ☐    by placing the document(s) listed above in a sealed envelope with postage thereon
11        fully prepaid, the United States mail at San Jose, California addressed as set forth
          below.
12

13   ☐    by placing the document(s) listed above in a sealed _____ envelope and
          affixing a pre-paid air bill, and causing the envelope to be delivered to
14        a _____ agent for delivery.

15   ☐    by personally delivering the document(s) listed above to the person(s) at the
          address(es) set forth below.
16

17   ☒    by transmitting via e-mail or electronic transmission the document(s) listed above
          to the person(s) at the e-mail address(es) set forth below.
18

19   | Michael L. Rodenbaugh | Brett Lewis |
     | Maria Richmond | Lewis & Lin LLC |
20   | RODENBAUGH LAW | 81 Prospect Street, Suite 8001 |
21   | 25435 Hutchinson Road | Brooklyn, NY 11201 |
     | Los Gatos, CA 95033 | |
22   | | *Attorneys for David Lahoit and Virtual Point* |
     | *Attorneys for Mike Rodenbaugh* | *(Pro Hac Vice to be submitted)* |
23

24        I am readily familiar with the firm's practice of collection and processing correspondence

25   for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same

26   day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on

27   motion of the party served, service is presumed invalid if postal cancellation date or postage

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

1   meter date is more than one day after date of deposit for mailing in affidavit.

2          I declare that I am employed in the office of a member of the bar of this court at whose

3   direction the service was made.

4          Executed on June 26, 2020, at San Jose, California.

5

6                                                      */s/ Heather L. Hong*

7                                                      Heather L. Hong

8   SJ - San Jose #4819-9108-7553 v1
    F0016-0001

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Jose